**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MOHAMMAD S. GALARIA, individually and on behalf of all others similarly situated, | Case No. 2:13-cv-118 |
| Plaintiff, | Judge Michael H. Watson |
| v. | Magistrate Judge Terence P. Kemp |
| NATIONWIDE MUTUAL INSURANCE COMPANY, a Ohio Corporation, | |
| Defendant. | |

| | |
|---|---|
| ANTHONY HANCOX, individually and on behalf of all others similarly situated, | Case No. 2:13-cv-257 |
| Plaintiff, | Judge Michael H. Watson |
| v. | Magistrate Judge Terence P. Kemp |
| NATIONWIDE MUTUAL INSURANCE COMPANY, a Ohio Corporation, | |
| Defendant. | |

**DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINTS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Nationwide Mutual Insurance Company ("Nationwide") hereby moves this Court to dismiss all remaining claims asserted against Nationwide in the Complaints. The grounds for this motion are more fully set forth in the accompanying memorandum in support.

Respectfully submitted,

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com

*Trial Attorney for Defendant Nationwide Mutual Insurance Company*

OF COUNSEL:

Mark P. Szpak (*pro hac vice*)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
Tel:    (617) 951-7000
Fax:    (617) 235-7500
mark.szpak@ropesgray.com

Michael N. Beekhuizen (0065722)
Amber L. Merl (0080655)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
beekhuizen@carpenterlipps.com
merl@carpenterlipps.com

*Attorneys for Defendant Nationwide Mutual Insurance Company*

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

## I.  <u>PRELIMINARY STATEMENT.</u>

The Sixth Circuit recently returned this case to this Court after narrowly reversing the

Court's previous order dismissing the case in its entirety.  Previously, on February 10, 2014, this

Court granted Nationwide Mutual Insurance Company's ("Nationwide") motion to dismiss,

finding Plaintiffs lacked Article III standing to assert their Fair Credit Report Act ("FCRA"),

negligence, and bailment claims, and Plaintiffs' invasion of privacy claim failed to state a claim.

Opinion and Order, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Feb. 10,

2014).  A split panel of the Sixth Circuit reversed, holding Plaintiffs adequately alleged Article

III standing for the negligence and bailment claims.  The panel did *not*, however, consider

whether those claims should be dismissed for failure to state claims for relief.  Opinion at 10-11,

*Galaria v. Nationwide Mut. Ins. Co.*, Nos. 15-3386/15-3387 (6th Cir. Sept. 12, 2016).  Similarly,

while the Sixth Circuit held the Court should not have dismissed Plaintiffs' FCRA claims for

lack of statutory standing, the Sixth Circuit "decline[d] to address the merits issue on appeal."

*Id.* at 11-12.  The Sixth Circuit went even further to say it was returning the merits questions to

this Court, **"which may dismiss for failure to state a claim if it concludes that Plaintiffs do**

**not have a cause of action under the FCRA."**  *Id.* at 12 (emphasis added).

This Court previously determined that Plaintiffs did not have a cause of action under

FCRA when it denied Plaintiffs' motion for leave to file an amended complaint because the

amendment would be futile.  Opinion and Order at 7, *Galaria v. Nationwide Mut. Ins. Co.*, No.

2:13-cv-118 (S.D. Ohio Mar. 11, 2015).  Specifically, this Court held the Plaintiffs' *proposed*

amended complaint lacked facts sufficient to plead a FCRA claim under *Iqbal* and *Twombly*.  *Id.*

at 9 ("Named Plaintiffs' assertion that Defendant did not maintain reasonable procedures to limit

the furnishing of consumer information is nothing more than a bare recitation of the elements of

the claim, however.").  Moreover, the proposed amended complaint failed to state a claim because there is no understanding of the FCRA term "furnish" which could hold Nationwide liable for furnishing personally identifiable information ("PII") to a third party when the information was *stolen* from Nationwide.  *Id.* at 10.  The Court should dismiss Plaintiffs' FCRA claims now for these very same reasons.

And while courts across the country have reached different conclusions applying Article III standing analysis in the data breach context, *compare Reilly v. Ceridian Corp.*, 664 F.3d 38 (3rd Cir. 2011) (applying same test as in *Clapper v. Amnesty Intern. USA*, 133 S.Ct. 1138 (2013)), *with Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), the overwhelming majority of courts have dismissed FCRA claims under Rule 12(b)(6) for exactly the reasons raised here.  *See, e.g., Shostack v. Diller*, No. 15-cv-2255, 2015 WL 5535808, at *10 (S.D.N.Y. Sept. 16, 2015) ("[m]erely stating that the violation was 'willful' or 'negligent' is insufficient" to allege a FCRA violation), *Tierney v. Advocate Health And Hospitals Corp.*, 797 F.3d 449, 451-53 (7th Cir. 2015) (formulaic allegations insufficient to state a claim under FCRA), *see also Dightman v. Tex. Dept. of Pub. Safety*, No. A-10-CA-776-SS, 2010 WL 4922646, at *4 (W.D. Tex. Nov. 29, 2010) (plaintiff fails to allege defendants transmitted any information, and therefore defendants could not have "furnished" information under FCRA); *Holmes v. Countrywide Fin. Corp.*, No. 5:08-CV-00205-R, 2012 WL 2873892, at *16 (W.D. Ky. July 12, 2012) ("[n]o coherent understanding of the words 'furnished' or 'transmitted' would implicate Countrywide's action under the FCRA" when the information was stolen by another party).

2

Finally, the Court should also dismiss Plaintiffs' remaining claims[1] for failure to state a claim on the following grounds:

- Plaintiffs' claims for willful and negligent violation of FCRA (Counts I and II) should be dismissed because Nationwide is not a consumer reporting agency under the statute, and Plaintiffs have failed to allege that Nationwide engages in the type of conduct regulated by FCRA. *See infra* Section III.B.3.

- Plaintiffs' claim for willful violation of FCRA (Count I) fails for the additional reason that Plaintiffs have not sufficiently alleged that Nationwide knowingly and intentionally acted in disregard of consumer rights. *See infra* Section III.B.5.

- Plaintiffs' claim for negligent violation of FCRA (Count II) fails for the additional reason that Plaintiffs have not sufficiently alleged any actual damage as required under the statute. *Id.*

- Plaintiffs' claim for negligence (Count III) should be dismissed because Plaintiffs have failed to allege any cognizable injury, a required element of a negligence claim. *See infra* Section III.C.1.

- Plaintiffs' claim for negligence (Count III) should be dismissed because it is barred by the economic loss doctrine. *See infra* Section III.C.3.

- Plaintiffs' claim for bailment (Count V) should be dismissed because Plaintiffs' personal information is not property that was intended to be returned by Nationwide. *See infra* Section III.D.

For all these reasons, Nationwide respectfully moves this Court to dismiss all remaining claims asserted against Nationwide in the Complaints.

## II.    FACTUAL ALLEGATIONS.

Nationwide is an Ohio corporation in the business of providing various insurance products and services to consumers. Plaintiffs Mohammed S. Galaria of Minnesota and Anthony Hancox of Kansas allege they either purchased insurance policies or received insurance quotes from Nationwide and that they provided personal information to Nationwide as part of those

---

[1] Plaintiffs did not appeal the Court's dismissal of the invasion of privacy claim, therefore the claim is no longer pending. Opinion and Order at 31, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Feb. 10, 2014), ("The Court dismisses Named Plaintiffs' invasion of privacy claim with prejudice under Rule 12(b)(6) for failure to state a claim.").

consumer transactions. Compl. ¶¶ 12-13. On October 3, 2012, Nationwide was the victim of a criminal attack on a portion of its computer network (the "intrusion"). Plaintiffs allege that the criminal attack involved data relating to "an estimated 1.1 million customers and non-customers who had purchased insurance products from Nationwide or sought insurance quotations." Compl. ¶ 14. Plaintiffs allege Nationwide sent a letter to Plaintiffs and the affected consumers alerting them to the criminal attack, and offering "one year of free credit monitoring and identity theft protection through Equifax, which provides under certain conditions up to $1 million identity fraud expense coverage and access to his credit report." Compl. ¶ 17.

Plaintiffs do not allege they have suffered any actual injury from the alleged data theft. They do not allege they have suffered any out-of-pocket expenses. They do not allege they have incurred any fraudulent charges. They do not allege they have been the subject of identity theft. Despite not suffering any actual injury from the intrusion, Plaintiffs nonetheless filed virtually identical putative class action Complaints against Nationwide.[2] Plaintiffs advanced five claims in their complaints, and four are still pending: (i) willful violation of FCRA (Count I); (ii) negligent violation of FCRA (Count II); (iii) negligence (Count III); and (iv) bailment (Count V). Plaintiffs' claim for invasion of privacy was not appealed by Plaintiffs and is no longer pending.[3] Plaintiffs purport to bring the claims on a class basis.

Plaintiffs' Complaints are devoid of any factual allegations to support their claims for FCRA violations, negligence, and bailment. Plaintiffs do not plead facts showing Nationwide

---

[2] Mr. Galaria's and Mr. Hancox's cases have been consolidated by Order of the Court, *see* Scheduling Order at 1-2, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Mar. 22, 2013), but no consolidated complaint has been filed. Pursuant to the March 22, 2013 Scheduling Order, the instant motion to dismiss is directed to both complaints. The Hancox and Galaria complaints are virtually identical and have the same paragraph numbering. This Memorandum will cite to both complaints together as "Complaints" or "Compl."

[3] See note 1, *supra*.

somehow furnished consumer information to a prohibited third party, or that Nationwide is a consumer reporting agency.  And finally, Plaintiffs do not plead facts showing actual injury from the alleged data theft.

## III.  LAW AND ARGUMENT.

### A.  Legal Standard.

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*  In other words, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In sum, after the Supreme Court's *Twombly* and *Iqbal* decisions, "a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *16630 Southfield Limited Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  "Instead, the sufficiency of a complaint turns on its 'factual content,' . . . requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *Id.* (citations omitted).  This requirement serves "a vital practical function: it prevents plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations—'when there is no reasonable likelihood that [they] can construct a claim from the events related in the complaint.'" *Id.* (quoting *Twombly*, 550 U.S. at 558) (alterations in original).

As shown below, Plaintiffs' Complaints fall well short of the pleading standard.

**B.    Plaintiffs' Claims For Violation Of The Fair Credit Reporting Act Fail As A Matter Of Law.**

In Counts I and II of the Complaints, Plaintiffs assert willful and negligent violations of FCRA.  Compl. ¶¶ 49-65. This Court previously held Plaintiffs failed to allege facts regarding how Nationwide violated FCRA.  Opinion and Order at 9, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Mar. 11, 2015) (With respect to Plaintiffs' proposed amended complaint, the Court held "[n]amed Plaintiffs' assertion that Defendant did not maintain reasonable procedures to limit the furnishing of consumer information is nothing more than a bare recitation of the elements of the claim.").  The Court also held that Plaintiffs' proposed amended complaint was futile because Nationwide did not "furnish" any information within the meaning of FCRA.  *Id.* at 9-10.  Instead, as alleged, that information was stolen.  *Id.*  The Court is absolutely correct and Plaintiffs' FCRA claims should be dismissed on these same grounds now.

**1.    Nationwide Did Not "Furnish" Plaintiffs' Personal Information To A Third Party.**

Plaintiffs fail to allege how Nationwide "furnished" Plaintiffs' information.  Section 1681(e) of FCRA provides two requirements for consumer reporting agencies:  (1) "[e]very consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under 1681b of this title," and (2) "[n]o consumer reporting agency may furnish a consumer report to any person it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."  15 U.S.C.§ 1681e(a) (2006).  *See also* Opinion and Order at 8, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Mar. 11, 2015).

Although the word "furnish" in Section 1681b is not defined in FCRA, courts have found that it "requires an affirmative act on the part of the consumer reporting agency."  *Id.* at 9-10; *see*

*Willingham v. Global Payments, Inc.*, No. 1:12-cv-1157, 2013 WL 440702, at *13 (N.D. Ga. Feb. 5, 2013) ("But, as the cases cited by Defendant demonstrate, 'furnish,' as used in the FCRA, involves the act of 'transmit[ting] information' to another."); *see also Holmes*, 2012 WL 2873892, at *16; *Dightman*, 2010 WL 4922646, at *4; *Alam v. Sky Recovery Servs., Ltd.*, No. H-08-2377, 2009 WL 693170, at *4 (S.D. Tex. Mar. 13, 2009); *Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 722-23 (E.D. La. Apr. 4, 2001).

Here, plaintiffs do not allege that *Nationwide* "furnished" plaintiffs' personal information to anyone. *See Holmes*, 2012 WL 2873892, at *16 (noting that in a case that involved the theft of personal information by a third party, "[t]he story Plaintiffs tell is not one where [the defendant] 'transmitted' their private information to unseen parties."). There are no facts alleged that Nationwide did or did not do anything. To the contrary, Plaintiffs repeatedly acknowledge in their Complaints that their personal information was "stolen" *from* Nationwide – not that Nationwide "furnished" their personal information to a third party. Compl. ¶¶ 2, 15, 57, 63. "When customer information is *stolen* from a consumer reporting agency, '[n]o coherent understanding of the words "furnished" or "transmitted" would implicate the consumer reporting agency's action under the FCRA.'" Opinion and Order at 10, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Mar. 11, 2015) (emphasis in original).

Should any doubt remain, the structure and context of FCRA confirm that "furnish" does not apply to a criminal cyber-attack. Although the term "furnish" is not defined in FCRA, it is used in several FCRA statutory provisions.[4] The use of "furnish" in these provisions is clearly in

---

[4] *See, e.g.*, 15 U.S.C. § 1681b(a) ("any consumer reporting agency may furnish a consumer report under the following circumstances . . . ."); § 1681c(d)(1) ("Any consumer reporting agency that furnishes a consumer report that contains information regarding [a title 11 case] shall include in the report . . . ."); § 1681f ("a consumer reporting agency may furnish identifying information respecting any consumer . . . to a governmental agency"); § 1681h(a)(1) ("A consumer reporting

the context of a "consumer reporting agency" intentionally providing a "consumer report" either
to a third person as part of a commercial transaction or to a governmental agency. Nowhere is
"furnished" used in a context that would suggest it was intended to apply to criminal hackers
who are alleged to have stolen data. This Court has before and should again construe "furnish"
consistently with its use throughout FCRA, and not in the idiosyncratic manner interposed by
Plaintiffs. *See Morrison v. Colley*, 467 F.3d 503, 509 (6th Cir. 2006) ("typically identical words
used in different parts of the same act are intended to have the same meaning.") (citations
omitted).

     This Court also should not interpret FCRA in a manner that leads to absurd results, as
Plaintiffs suggest. *Guzman v. U.S. Dept. of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012).
Plaintiffs' interpretation of FCRA – shoehorning a claim of criminal data theft into the
"furnishing" of a "consumer report" – would do just that. If Nationwide is a "consumer
reporting agency," which it is not, and if the criminal attack on Nationwide's computer network
involved the "furnishing" of a "consumer report," then under FCRA:

- Nationwide would have been obligated to disclose to the cyber-criminals
information regarding any Title 11 cases involving the affected
consumers. *See* 15 U.S.C. § 1681c(d)(1) ("Any consumer reporting
agency that furnishes a consumer report that contains information
regarding any case . . . under title 11 shall include in the report an
identification of the chapter of such title 11 under which such case arises .
. . .");

- Nationwide would have been obligated to tell the cyber-criminals whether
the number of credit inquiries affected the consumers' credit scores. *See*
15 U.S.C. § 1681c(d)(2) ("Any consumer reporting agency that furnishes a

---

agency shall require . . . that the consumer furnish proper identification"); § 1681k(a) ("A
consumer reporting agency which furnishes a consumer report for employment purposes . . . .");
§ 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any
consumer reporting agency if the person know . . . the information is inaccurate"); § 1681v(a) ("a
consumer reporting agency shall furnish a consumer report . . . to a government agency
authorized to conduct investigations . . . .").

consumer report that contains any credit score . . . shall include in the report . . . that a key factor . . . was the number of enquiries[.]"); and

- Nationwide would have been obligated to give the cyber-criminals a notice regarding the cyber-criminals' obligations under FCRA as users of the consumer reports. *See* 15 U.S.C. § 1681e(d)(1)(B) ("A consumer reporting agency shall provide to any person . . . to whom a consumer report is provided . . . a notice of such person's responsibilities under this subchapter.").

These absurd results are not idle speculation. Plaintiffs' own allegations reflect the odd results that would occur under their interpretation of FCRA. Plaintiffs allege, for example, that "Defendant flagrantly disregarded . . . Plaintiff's . . . rights . . . by not obtaining Plaintiff's . . . prior written consent . . . to disclose their [personal information] to any other person—as required by FCRA[.]" Compl. ¶ 29. Under this theory, Nationwide violated FCRA by not obtaining Plaintiffs' written consent to have their data stolen by cyber-criminals. Plaintiffs' reading of FCRA cannot be squared with the plain language of FCRA's statutory provisions, let alone its purpose and intent.

These are but a few of the absurd results which occur if criminal cyber-hacking is considered to involve the "furnishing" of a "consumer report" as Plaintiffs assert. Plaintiffs' efforts to shoehorn the criminal attack on Nationwide's computer network into a FCRA violation should be rejected.

### 2. Plaintiffs Have Failed To Plead Any Facts Demonstrating How Nationwide Violated FCRA.

Plaintiffs allege that Nationwide was "required to adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personnel, insurance and other information" and that Nationwide "violated FCRA by failing to adopt and maintain such protective procedures[.]" Compl. ¶ 55. This Court rejected the corresponding allegation in the proposed Amended Complaint as an impermissible threadbare allegation:

9

Named Plaintiffs' assertion that Defendant did not maintain reasonable procedures to limit the furnishing of consumer information is nothing more than a bare recitation of the elements of the claim, however.  The proposed amendment lacks any facts about the particular procedures Defendant did have in place as well as how they were inadequate.  Likewise, it lacks any facts concerning the particular procedures Named Plaintiffs consider reasonable and that were lacking.  As best this Court can determine, the Amended Complaint *assumes* that the procedures were inadequate by the mere fact that customer information was stolen, but it does not plead any facts to support such an assumption.  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Opinion and Order at 9, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Mar. 11, 2015).  The Complaints should be dismissed for this reason under Rule 12(b)(6).

### 3.     Nationwide Is Not A "Consumer Reporting Agency" Governed By FCRA.

Moreover, Nationwide is not a "consumer reporting agency" under FCRA.[5]  FCRA defines "consumer reporting agency" as "any person which . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (Supp. V 2006).  Plaintiffs do not plead any facts demonstrating that Nationwide meets this definition.  Instead, Plaintiffs make the following formulaic allegation:

> Defendant is a Consumer Reporting Agency as defined under FCRA because on a cooperative nonprofit basis and/or for monetary fees, Defendant regularly engages, in whole or in part, in the practice of assembling Plaintiff's and the other Class Members' PII for the purpose of furnishing Consumer Reports to third parties in connection with providing insurance quotes and/or uses interstate commerce for the purpose of preparing and/or furnishing Consumer Reports in connection with providing insurance quotes.

---

[5]Although it did not reach the issues, this Court previously noted that two "further hurdles" to Plaintiffs claims are the questions whether Nationwide is a "credit reporting agency" under FCRA, and whether PII is a "credit report" under FCRA.  Opinion and Order at 10 n.5, *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118 (S.D. Ohio Mar. 11, 2015).  The answer to both questions is no, as discussed above.

Compl. ¶ 53.

This threadbare allegation and contorted interpretation of the statute is not sufficient under *Iqbal* or *Twombly*. The Seventh Circuit has rejected an *identical* allegation that a defendant was a "consumer reporting agency" under FCRA:

> The complaint alleges that "Advocate is a Consumer Reporting Agency" because it "assembl[es] information on consumers" on a "cooperative nonprofit basis and/or for monetary fees" for the "purpose of furnishing Consumer Reports to third parties." But these are merely conclusory allegations—a "threadbare recital" of the statutory elements. *Adams*, 742 F.3d at 728. On their own, they are insufficient under *Twombly* and *Iqbal*.

*Tierney v. Advocate Health And Hospitals Corp.*, 797 F.3d 449, 451–52 (7th Cir. 2015).
Here, Plaintiffs' identical allegation is also a "threadbare recital of the statutory elements" and should be rejected for the same reason.

Furthermore, in *Tierney*, the Seventh Circuit held that the defendant healthcare network was not the type of business that FCRA was intended to regulate:

> Advocate is, as the complaint acknowledges, a "network of affiliated doctors and hospitals that treat patients"—not a credit or consumer reporting company.

*Tierney*, 797 F.3d at 452. The fact that the defendant collected information about its own customers, and may have shared that information with third parties in order to "determine eligibility and pricing for health services and to set rates for a variety of insurance products" did not make the defendant a "consumer reporting agency" for purposes of FCRA. *Id.* As the Seventh Circuit noted, FCRA expressly excludes from the definition of a "consumer reporting agency" any "report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* (quoting 15 U.S.C. § 1681a(d)(2)(A)(i)).

Like the healthcare network in *Tierney*, Nationwide is not the type of business that FCRA is intended to regulate as a consumer reporting agency. Plaintiffs do not allege that Nationwide

11

is a credit bureau or any facts showing that it is a consumer reporting agency.  Instead, Plaintiffs

allege that Nationwide collects consumers' personal information "in connection with providing

insurance quotes." *See* Compl. ¶¶ 51–53.  The fact that Nationwide may collect and use

information about its own customers in order to provide them with insurance quotes or to

ultimately underwrite and price insurance does not make Nationwide a "consumer reporting

agency" under FCRA.  *See Tierney*, 797 F.3d at 452.

Lastly, as the Seventh Circuit pointed out in *Tierney*, numerous other courts have rejected

similar attempts to apply FCRA to businesses it was not intended to regulate.  *See Frederick v.*

*Marquette National Bank*, 911 F.2d 1, 2 (7th Cir. 1990) ("[t]he statute is not even potentially

applicable" because Marquette is a bank, not a "consumer reporting agency"); *Mirfasihi v. Fleet*

*Mortgage Corp.*, 551 F.3d 682, 686 (7th Cir. 2008) (defendant "is not a consumer reporting

agency—it is a bank"); *DiGianni v. Stern's*, 26 F.3d 346, 348–49 (2d Cir. 1994) (the term

"consumer reporting agency" did not include retail department stores that merely received and

transmitted information about their customers); *Rush v. Macy's New York, Inc.*, 775 F.2d 1554,

1557 (11th Cir. 1985) (defendant Macy's "did no more than furnish information to a credit

reporting agency"); *Garnett v. Millennium Med.  Mgmt. Res., Inc.*, No. 10 C 3317, 2010 WL

5140055, at *2–3 (N.D. Ill. Dec. 9, 2010) (provider of emergency room medical services was not

a "consumer reporting agency"); *Holmes*, 2012 WL 2873892, at *15 (W.D. Ky. July 12, 2012)

("Courts construing who or what qualifies as consumer reporting agencies have restricted the

label to the credit reporting bureaus.").[6]

---

[6] Also, a magistrate judge recommended dismissal of FCRA claims in a data breach case where
the plaintiffs failed to demonstrate that the defendant met the definition of a "consumer reporting
agency" under the statute.  *Willingham*, 2013 WL 440702, at *13-14 (Magistrate Judge's Final
Report and Recommendation) (recommending that the defendant's Rule 12(b)(6) motion to
dismiss be granted).

### 4. **Plaintiffs Have Not Alleged The Existence Of A "Consumer Report."**

Plaintiffs also fail to allege how their personal information constitutes a "consumer report" under FCRA. A "consumer report" is defined as a "written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness" for certain listed purposes. 15 U.S.C. § 1681a(d)(1). Plaintiffs fail to allege any facts demonstrating that this definition has been met. Again, the *Tierney* case illustrates this point:

> And there is no claim that Advocate shares the information so that the recipient can make determinations of credit or insurance eligibility. In other words, Advocate is not providing "consumer reports." *See id.* § 1681a(d)(1).

*Tierney*, 797 F.3d at 453. Plaintiffs in this case similarly do not allege that Nationwide shared any information so that the *recipient* of the information could make a determination of credit or insurance eligibility. Plaintiffs do not allege any facts demonstrating the existence of a "consumer report." This Court should dismiss Plaintiffs' FCRA claims on this ground as well.

### 5. **Plaintiffs' Allegations Of A Willful Or Negligent FCRA Violation Are Not Sufficient To State A Claim.**

Plaintiffs have also failed to allege Nationwide's purported FCRA violations were willful or negligent. As with their other allegations, Plaintiffs have only made conclusory allegations that Nationwide acted willfully or negligently with respect to the purported FCRA violations. *See* Compl. ¶¶ 56, 63. Such allegations amount to no more than a "formulaic recitation of the elements of [plaintiffs'] cause of action," and thus fail to satisfy Plaintiffs' pleading obligations under *Twombly*. *See Shostack*, 2015 WL 5535808, at *10 ("[m]erely stating that the violation was 'willful' or 'negligent' is insufficient" to allege a FCRA violation); *see also Tierney*, 797 F.3d at 451-53 (formulaic allegations insufficient to state a claim under FCRA).

Plaintiffs' novel interpretation of FCRA also undermines its allegations of a "willful" violation. As the Supreme Court has held, violation of a statute cannot be considered "willful"

13

where "no court of appeals ha[s] spoken" to application of the statute to the circumstances in question, and where there is "no authoritative guidance" from the relevant governmental agency that administers the statute.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69–70 n.20 (2007) (involving claim of "willful" violation under 15 U.S.C. § 1681n(a) with respect to other FCRA provisions).  Plaintiffs cannot point to any Court of Appeals decision or agency guidance taking the unprecedented view that insurance companies like Nationwide are "consumer reporting agencies."  This by itself precludes a determination that Nationwide engaged in a *willful* violation of FCRA.

Finally, plaintiffs' claim for negligent violation of FCRA fails for the additional reason that Plaintiffs have failed to plead actual damages as required under the statute.  *See* 15 U.S.C. § 1681o(a)(1).  Plaintiffs do not allege that their identities have ever been stolen, that they incurred any fraudulent charges, or that they have suffered any actual injury.  Plaintiffs' claim for negligent violation of FCRA thus fails to state a claim for this reason as well.

**C.**   **Plaintiffs' Claim For Negligence Must Be Dismissed.**

To state a claim for negligence, a plaintiff must allege the defendant "(1) owed a duty of care to the plaintiff; (2) breached that duty; and (3) the breach of that duty proximately caused (4) injury to the plaintiff."[7]  *Kahle v. Litton Loan Serv. LP*, 486 F. Supp. 2d 705, 708 (S.D. Ohio 2007).  Here, Plaintiffs' failure to allege a cognizable injury dooms their negligence claim.

---

[7] Federal courts sitting in diversity must apply the choice-of-law rules of the forum state.  *See Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987). Under Ohio choice of law rules, "the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984).  In this litigation, Ohio's choice of law rules offers three possible jurisdictions whose laws could apply:  Ohio, Kansas or Minnesota.  This Memorandum analyzes Ohio law, noting that the laws of Ohio, Kansas, and Minnesota with respect to negligence apply the same standard.  *See Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995); *Honeycutt v. City of Wichita*, 251 Kan. 451, 463 (1992).  To the extent there are any material differences between Ohio law and the laws of Kansas and Minnesota, they are noted.

### 1.  Plaintiffs Fail To Allege Any Cognizable Injury.

This Court, as well as many others, has consistently held that mere allegations of exposure of a plaintiff's personal information are insufficient to establish a cognizable injury so as to support a negligence claim.  *See Kahle*, 486 F. Supp. 2d at 712-13 (negligence claim failed because customer did not suffer a cognizable injury as a result of the theft of her personal information from mortgage loan service provider, where the plaintiff was not a victim of identity theft); *see also Guin v. Brazos Higher Educ. Serv. Corp.*, No. Civ. 05-668 RHK/JSM, 2006 WL 288483, at *5-6 (D. Minn. Feb. 7, 2006) (the plaintiff failed to establish a cognizable injury as a matter of law because he experienced no identity theft or other fraud as a result of the stolen information).[8]  Here, Plaintiffs do not allege identity theft or unauthorized use of their personal information causing a pecuniary loss, and their speculation that they may be at increased risk of identity theft or "phishing" scams is solely the result of a perceived risk of future injury that may never occur and which does not amount to a cognizable injury.  Compl. ¶¶ 19, 28.

In an effort to satisfy the "injury" element of their negligence claim, Plaintiffs allege that as a result of the intrusion, they were "required" to "take affirmative acts" to purchase internet

---

[8]*See also In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, No. 11cv2119, 11cv2120, 11md2258 AJB (MDD), 2012 WL 4849054, at *12 (S.D. Cal. Oct. 11, 2012) (dismissing negligence claim because the "mere 'danger of future harm, unaccompanied by present damage, will not support a negligence action.'" (citations omitted)); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (affirming dismissal because the plaintiffs failed to allege actual loss or damage required to state a claim for negligence under Washington law); *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010) (affirming summary judgment for the defendant because the plaintiff failed to allege appreciable damage required to state a claim for negligence under California law); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635, 640 (7th Cir. 2007) (affirming judgment on pleadings for the defendant because the plaintiffs failed to allege compensable injury as required to state a claim for negligence under Indiana law); *McLoughlin v. People's United Bank, Inc.*, No. 3:08-cv-00944(VLB), 2009 WL 2843269, at *8 (D. Conn. Aug. 31, 2009) (granting motion to dismiss because the plaintiffs failed to allege actual damages required to state a claim for negligence under Connecticut law); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1053, 1055 (dismissing claims for lack of standing and because the plaintiff failed to allege actual damage required to state a claim for negligence under Missouri law).

monitoring and credit monitoring and reporting services, and have thus incurred "financial and temporal cost[s]."  Compl. ¶ 35.  These alleged injuries do not suffice.  First, Plaintiffs did not need to incur these "costs" because, as they concede, Nationwide already had offered one year of free credit monitoring and identity theft protection through Equifax.  Compl. ¶ 17.  Second, numerous cases make clear that the cost of subsequent steps to protect against the mere risk of future identity theft does not suffice as a legally cognizable injury for a claim of negligence.[9][10]

---

[9]*See, e.g., Grigsby v. Valve Corp.*, No. C12-0553JLR, 2012 WL 5993755, at * 2 (W.D. Wash. Nov. 14, 2012) (dismissing negligence claim and holding that "[a]lmost universally, courts have found that certain commonly-argued categories of hacking damages are not cognizable.  For example, federal courts routinely dismiss actions in which the only damages a plaintiff alleges are increased risk of identity theft and money spent monitoring credit and attempting to prevent identity theft."); *Ruiz v. Gap.*,622 F. Supp. 2d 908, 913-16 (N.D. Cal. 2009) (time and money spent on credit monitoring is too speculative to suffice as cognizable injury), *aff'd,* 380 F. App'x 689, 691, 691-92 (9th Cir. 2010); *Belle Chasse Auto. Care, Inc. v. Advanced Auto Parts, Inc.*, No. 08-1568, 2009 WL 799760, at *4-5 (E.D. La. Mar. 24, 2009) (dismissing negligence claims for emotional distress damages and cost of credit monitoring resulting from data breach on ground that injury was too speculative to state a claim); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009) (dismissing negligence claims for costs incurred from credit monitoring where the plaintiffs failed to allege identity theft or other present, non-speculative harm); *Shafran v. Harley–Davidson, Inc.*, 07 Civ. 01365(GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (explaining that "[c]ourts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law [of negligence] is prepared to remedy."); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 284 (S.D.N.Y. 2008) (dismissing negligence claim seeking cost of purchasing insurance and cost of credit monitoring).

[10] In a last-ditch effort to meet the injury element, Plaintiffs allege that the intrusion caused a deprivation in the value of their personal information.  Compl. ¶¶ 33-34.  But Plaintiffs did not present any argument regarding loss of privacy or deprivation in value on appeal and accordingly, have waived these arguments. *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal.").  But even if Plaintiffs had preserved these arguments, the allegations do not suffice, as they fail to allege facts that a devaluation in their personal information has actually materialized.  Instead, Plaintiffs merely describe the purported general value of personal information on the black market, and speculate that because their personal information *could* be sold on the black market by others, they are somehow foreclosed from selling that data themselves or required to sell it at a decreased price.  Compl. ¶ 5.  Moreover, Plaintiffs do not allege that they had any intentions to sell their personal information and therefore, like their other claims, this amounts to no more than a potential future injury, which fails to state a claim.  Numerous courts have held that simply alleging diminution in the value of personal information at some undetermined point

### 2. Plaintiffs' Allegations Of Negligent Conduct Fail To Satisfy _Iqbal/Twombly_.

In addition to failing to satisfy the injury element of their negligence claim under Count III, Plaintiffs' negligence claim also fails to meet the pleading standard under _Iqbal_ and _Twombly_. Specifically, a plaintiff must provide "more than labels and conclusions," or a "formulaic recitation of the elements" to withstand a motion to dismiss. _See Bricker v. R & A Pizza, Inc._, 804 F. Supp. 2d 615, 618 (S.D. Ohio 2011) (internal citation omitted). Here, plaintiffs' complaints fall well short of that standard.

As to the first two elements of a negligence claim – a duty of care owed to a plaintiff and breach of that duty – Plaintiffs allege that Nationwide breached its duty to exercise reasonable care when safeguarding Plaintiffs' data, but they fail to provide any of the required "factual matter" necessary to state such a claim. _See Twombly_, 550 U.S. at 570. First, Plaintiffs do not address the duty element of the negligence cause of action they seek to assert. Second, Plaintiffs do not make any allegations identifying any conduct of Nationwide purportedly in breach of any such duty. Instead, Plaintiffs make general statements regarding security, stating that their "PII was improperly handled, inadequately protected, readily able to be copied by data thieves and not kept in accordance with basic security protocols." Compl. ¶ 3. Such statements are vague and totally devoid of any factual detail that could support a claim.

As to the remaining elements of the negligence claim – proximate causation and injury to the named plaintiffs – Plaintiffs similarly fail to allege that any such deficiencies purportedly _caused_ the intrusion. Instead, Plaintiffs state in conclusory fashion that, because of Nationwide's

---

in the future is insufficient to show cognizable injury when stating a claim for negligence in the data breach context. _See Kahle_, 486 F. Supp. 2d at 712–13 (plaintiff's negligence claim failed because she did not suffer a cognizable injury as a result of the theft of her personal information from a mortgage loan service provider); _Guin_, 2006 WL 288483, at *5–6 (plaintiff failed to establish a cognizable injury because he experienced no identity theft or other fraud as a result of the stolen information); _see also_ note 8, _supra_.

alleged failure to "properly safeguard and protect the PII of its customers and non-customers, [their] PII was stolen, wrongfully disseminated without authorization and compromised." Compl. ¶ 15.  Plaintiffs cannot rely on the mere *fact* of an intrusion to support allegations as to its *cause*; such statements are conclusory on their face, and, if anything, highlight that any alleged injuries were caused by third-party criminals, not Nationwide.

### 3.      The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim.

Even if Plaintiffs' complaints properly alleged the four elements of a negligence claim – and they do not – Plaintiffs' negligence claim would nonetheless be barred by the economic loss doctrine.  Simply put, the economic loss doctrine precludes the recovery of purely economic losses in tort actions, absent personal injury or physical damage to one's property.  *See Wells Fargo Bank, N.A. v. Fifth Third Bank*, No. 1:12-CV-794, 2013 WL 1064829, at *5-6 (S.D. Ohio Mar. 14, 2013) (citing *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6).[11]  Plaintiffs' alleged damages for negligence consist entirely of "economic damages" associated with credit monitoring, identity theft protection, and diminution of the value of their personal information.  Compl. ¶ 70.  Courts in numerous other data breach cases have recognized that such economic losses are simply not recoverable under a negligence theory.[12]  Here, Plaintiffs have not alleged any personal injury or physical damage to their

---

[11] Minnesota and Kansas also both apply the economic loss doctrine to bar purely economic losses in negligence claims.  *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 871 (D. Minn. 2012) ("Under the economic loss doctrine, a plaintiff is prohibited from recovering purely economic losses in tort."); *David v. Hett*, 293 Kan. 679, 700 (Kan. 2011) (acknowledging that the economic loss doctrine applies in Kansas, although it does not bar claims by homeowners seeking to recover economic damages resulting from negligently performed residential construction services.)

[12]*See, e.g.*, *In re Michaels Stores Pin Pad Litig.*, No. 11 C 3350, 830 F. Supp. 2d 518, 529−31 (N.D. Ill. 2011) (economic loss doctrine barred negligence claims in data breach action under Illinois law); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. H−10−171, 2011 WL 1232352, at *21−25 (S.D. Tex. Mar. 31, 2011) (same result under New Jersey,

property arising from Nationwide's putative negligence; the mere exposure of electronic data does not amount to "property damage" sufficient to avoid the economic loss doctrine. *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d at 498; *Cumis*, 918 N.E.2d at 46-47; *Pa. State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 330 (M.D. Pa. 2005). Count III should be dismissed for failure to state a claim.

### D. Plaintiffs' Claim For Bailment Must Be Dismissed.

The type of relationship and transaction necessary to support a claim for bailment does not exist in this case. Under Ohio law,[13] bailment is defined as "the delivery of goods or personal property by one person to another in trust for a particular purpose, with a contract, express or implied, *that the property shall be returned once the purpose has been faithfully executed.*" *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 830 (2d Dist. 1993) (emphasis added). Courts in data breach cases have uniformly rejected the notion that personal information provided incidentally to a transaction or other business relationship is or could be a bailment. *See In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 2012 WL 4849054, at *23; *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008); *Richardson v. DSW, Inc.*, No. 05 C 4599, 2005 WL 2978755, at *4 (N.D. Ill. Nov. 3, 2005).

Here, as recognized in *Sony*, *Ruiz*, and *DSW*, Plaintiffs' personal information is not "property" that was intended to be – or could be – "returned" by Nationwide, as bailee. *See In re*

---

Ohio, and Texas law); *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498−99 (1st Cir. 2009) (same result under Massachusetts law); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175−78 (3d Cir. 2008) (same result under Pennsylvania law); *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 442 F. Supp. 2d 206, 211−14 (M.D. Pa. 2006) (same result under Maine law); *Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 46−47 (Mass. 2009) (same result under Massachusetts law).

[13] Kansas and Minnesota law apply the same legal standard for a bailment claim. *See M. Bruenger & Co., Inc. v. Dodge City Truck Stop, Inc.*, 675 P.2d 864, 866, 868, (Kan. 1984)*; Colwell v. Metro. Airports Comm'n., Inc.*, 386 N.W.2d 246, 247 (Minn. Ct. App. 1986).

*Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 2012 WL 4849054, at * 23; *Ruiz*, 540 F. Supp. 2d at 1127; *DSW*, 2005 WL 2978755, at *4.  Plaintiffs do not, and cannot, allege that they had an express or implied contract with Nationwide whereby they entrusted Nationwide with their property and contemplated that it would be "*returned*" to them at some later date.

In *Sony*, the court highlighted the incongruity in applying the concept of bailment to allegations that the plaintiffs' personal data had been exposed by the defendant.  *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 2012 WL 4849054, at * 23.  The *Sony* court accordingly dismissed the plaintiffs' "unorthodox" claim of bailment, stating:

> First, as Plaintiffs freely admit, Plaintiffs' Personal Information was stolen as a result of a criminal intrusion of Sony's Network. Plaintiffs do not allege that Sony was in any way involved with the Data Breach. Rather, Plaintiffs allege that Sony failed to maintain adequate security procedures to protect against this type of theft. Thus, there are no allegations of conversion or any other intentional conduct by Sony that would indicate that Sony sought to unlawfully retain possession of Plaintiffs' Personal Information.
>
> Second, the Court is hard pressed to conceive of how Plaintiffs' Personal Information could be construed to be personal property so that Plaintiffs somehow "delivered" this property to Sony and then expected it be returned. If such a legal theory for bailment exists, Plaintiffs have failed to present the Court with such in its Opposition papers.

*Id.* (citations omitted).  As in *Sony*, *Ruiz*, and *DSW*, the bailment count here should be dismissed.

## IV. CONCLUSION.

For all the foregoing reasons, Nationwide respectfully requests that the Court dismiss the remaining claims in Plaintiffs' Complaints with prejudice in their entirety.

Dated:  November 9, 2016

Respectfully submitted,

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300

280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com

*Trial Attorney for Defendant Nationwide
Mutual Insurance Company*

OF COUNSEL:

Mark P. Szpak (*pro hac vice*)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
Tel:    (617) 951-7000
Fax:    (617) 235-7500
mark.szpak@ropesgray.com

Michael N. Beekhuizen (0065722)
Amber L. Merl (0080655)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
beekhuizen@carpenterlipps.com
merl@carpenterlipps.com

*Attorneys for Defendant Nationwide Mutual
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendant Nationwide Mutual Insurance Company's Motion To Dismiss Plaintiffs' Class Action Complaints was filed through the ECF system this 9th day of November, 2016, and will be sent via the ECF system to registered participants, including the persons listed below:

Charles T. Lester , Jr.
Charles T. Lester, Jr., Attorney at Law
PO Box 75069
Fort Thomas, KY 41075-0069

Ben Barnow, Esq.
Barnow and Associates, P.C
One North LaSalle
Suite 4600
Chicago, IL 60602

Richard L. Coffman
The Coffman Law firm
First City Building
505 Orleans Street, Suite 505
Beaumont, Texas 77701

Ralph K. Phalen, Esq.
Ralph K. Phalen Law, P.C.
1000 Broadway, Suite 400
Kansas City, Missouri 64105

Mitchell L. Burgess
Burgess & Lamb, P.C.
1000 Broadway, Suite 400
Kansas City, Missouri 64105
*Attorneys for Plaintiff*

/s/ Michael H. Carpenter
*One of the Attorneys for Defendant*
*Nationwide Mutual Insurance Company*